IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| STANLEY N. DYE and | * | CHAPTER 11 |
| SUSAN E. DYE, | * | |
| d/b/a D&D SEPTIC, d/b/a BUGGY BATH | * | |
| CAR WASH, d/b/a/ SIX LINKS MOBILE | * | |
| HOME PARK, d/b/a HOLLY MANOR | * | |
| MOBILE HOME PARK, d/b/a SALEM | * | |
| ACRES MOBILE HOME PARK, | * | |
| Debtors-in-Possession | * | |
| | * | CASE NO. 1:12-bk-00609MDF |
| MAGNOLIA PORTFOLIO, LLC, | * | |
| Movant | * | |
| | * | |
| v. | * | |
| | * | |
| STANLEY N. DYE and | * | |
| SUSAN E. DYE, | * | |
| d/b/a D&D SEPTIC, d/b/a BUGGY BATH | * | |
| CAR WASH, d/b/a/ SIX LINKS MOBILE | * | |
| HOME PARK, d/b/a HOLLY MANOR | * | |
| MOBILE HOME PARK, d/b/a SALEM | * | |
| ACRES MOBILE HOME PARK, | * | |
| Respondents | * | |

## OPINION

Magnolia Portfolio, LLC ("Magnolia") filed a motion for relief from the automatic stay (the "Relief Motion") to exercise its state law rights against real and personal property owned by Stanley and Susan Dye ("Debtors"). Magnolia also requested the Court to appoint a Chapter 11 trustee, but only as to the operation of Debtors' businesses and commercial properties. At the hearing on the appointment of a Chapter 11 trustee, the Court declined to appoint a trustee with limited jurisdiction, but agreed to consider whether cause existed under 11 U.S.C. § 1112(b)(1) to convert the case to Chapter 7 (the "Conversion Motion"). For the reasons set forth below, relief from the stay will be granted in part. The case will not be converted to Chapter 7 pending

Debtors' filing of an amended disclosure statement and plan of reorganization on or before January 1, 2014, which addresses the current status of Debtors' assets and liabilities. If Debtors fail to file an amended disclosure statement and plan by January 1, 2014 or are unable to confirm a plan on or before April 1, 2014, the case will be converted to Chapter 7.

## I. Procedural History

Debtors filed a voluntary petition under Chapter 11 on February 2, 2012. In their schedules, Debtors listed the following assets that are relevant to Magnolia's Relief Motion:

810 North Hanover Street, Carlisle, PA 17013[1];
1107 Petersburg Road, Boiling Springs, PA 17007[2];
33-37 W. North Street, Carlisle, PA 17013;
801 Sand Bank Road, Mt. Holly Springs, PA 17065;
269 Red Tank Road, Boiling Springs, PA 17007;
29 W. North Street, Carlisle, PA 17013;
90 Salem Church Road, Mechanicsburg, PA 17056;
155 Salem Church Road, Mechanicsburg, PA 17056[3];
1998 International (VIN 1HTSCAAM9WH566338);
1991 International (VIN 1HTSDZ7N2MH317100); and
1998 Peterbilt (VIN 3BPNHD7X4WF467604).

---

[1] On May 28, 2013, Magnolia was granted relief from the stay to pursue its state law rights against the Hanover Street property.

[2] Quarter Aces Drag-O-Way, Inc. operates a drag racing strip on the Petersburg Road property. Stanley Dye is the President of Quarter Aces Drag-O-Way. On May 28, 2013, Magnolia was granted relief from the stay to pursue its state law rights against the property. On August 21, 2013, Debtor filed a motion to reimpose the stay, which was withdrawn in open court on August 27, 2013.

[3] On February 12, 2013, Mid Penn Bank was granted relief from the stay to pursue its state law remedies against the Salem Church Road properties. Magnolia was granted relief from the stay as to these properties on August 8, 2013. On August 28, 2013, an Order was entered authorizing Debtors to sell both Salem Church Road properties to Ward Realty Ventures free and clear of liens. Magnolia received no payment on its claims from these sales.

2

On July 5, 2013, Magnolia filed the motion now before me asserting that prior to filing their Chapter 11 petition, Debtors had defaulted on seven loans originated by Orrstown Bank ("Orrstown") and transferred to Magnolia after the petition was filed. Magnolia asserts that each loan is secured by specific property and that all loans are cross collateralized by the above-listed assets (the "Collateral"). Magnolia alleges that after the petition was filed Debtors failed to make loan payments when they were due, failed to pay property taxes, and failed to maintain casualty insurance on the properties. Magnolia also asserts that relief should be granted because Debtors have allowed the Collateral to deteriorate and have no equity in the properties. Further, Magnolia argues that Debtors' business projections demonstrate that they are unable to generate sufficient income to cover debt service. Therefore, Magnolia argues, the properties are unnecessary for an effective reorganization. Accordingly, Magnolia seeks relief from the stay as to the remaining Collateral subject to the automatic stay.

Alternatively, Magnolia argues that cause exists to convert the case to Chapter 7. In support of its request for conversion, Magnolia asserts that the Collateral has decreased in value since the filing of the petition, that Debtors have grossly mismanaged estate assets, and that there is inadequate net income from operations to fund a plan. Magnolia also cites Debtors' failure to comply with the Court's May 28, 2013 order directing Debtors to cease operation of the drag strip on the Petersburg Road property.[4]

Debtors filed an Answer to Magnolia's Relief Motion on July 19, 2013 averring that they have proposed a confirmable plan of reorganization through which Magnolia's claims will be

---

[4] At the time the May 28 Order was entered, the Court had not been apprised that a corporation owned by Debtor Stanley Dye, Quarter Aces Drag-O-Way, Inc., rather than Debtors, were operating the drag strip.

3

satisfied in full.[5] They dispute that cause exists to convert the case, citing to their compliance with reporting requirements and the sale of the Salem Church Road properties which enabled their largest secured creditor – Mid Penn Bank – to be paid in full. Debtors argue that they are making "regular monthly payments" to Magnolia and that Debtors' septic business is generating sufficient profits to fund payments to Magnolia. A hearing was held on both the Relief Motion and the Conversion Motion on August 6 and 27, 2013. The parties have filed briefs, and the matter is ready for decision.[6]

## II. Factual Findings

Debtors are a married couple who, at the time of the filing of their bankruptcy petition, managed various residential and commercial properties, including three trailer parks, a drag strip, a car wash, and several apartments. Debtor Stanley Dye also operates a septic service, and Debtor Susan Dye is employed in her father's business.

Between July 2007 and March 2011, Debtors entered into a series of commercial loans with Orrstown secured by the Collateral. The balance due on these loans as of the petition date

---

[5] Debtors filed a Small Business Disclosure Statement and a Plan of Reorganization on November 26, 2012. Three objections filed to the Disclosure Statement were sustained after hearing on January 29, 2013. An Amended Disclosure Statement was filed on April 9, 2013. Objections were again filed and an order denying approval of the disclosure statement was entered on May 29, 2013. A Second Amended Disclosure Statement was filed on July 11, 2013, which also was disapproved by the Court. Following the hearings in this matter, Debtors filed a Third Amended Disclosure Statement, but no amended plan has been filed since the original plan. Although it has not been raised by any party in interest, Debtors have failed to confirm their plan within 45 days after the date the plan was filed as provided in 11 U.S.C. § 1121(e)(3) and § 1129(e).

[6] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(B) and (O). This Opinion constitutes findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052, which is applicable to contested matters pursuant to Fed. R. Bank. P. 9014.

was $1,738,497.88. Four of the properties comprising the Collateral were sold or are in the process of being sold. None of the sales produced sufficient proceeds to satisfy, even in part, the loans now held by Magnolia.

*A. The Collateral*

In the motion now before me, Magnolia seeks relief from the stay to pursue its state law remedies against the following real properties:

33-37 W. North Street, Carlisle, PA 17013 ("33-37 W. North Street");
801 Sand Bank Road, Mt. Holly Springs, PA 17065 ("Sand Bank Road");
269 Red Tank Road, Boiling Springs, PA 17007 ("Red Tank Road"); and
29 W. North Street, Carlisle, PA 17013 ("29 W. North Street").[7]

These properties serve as collateral for one or more of the seven loans now held by Magnolia. The loan documents require Debtors to make timely monthly payments, to maintain appropriate insurance on the properties, and to pay timely all real estate taxes. The mortgage securing each loan, except one, includes a cross-collateralization provision, which states as follows: "[i]n addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, [and] whether due or not due . . . ." *See, e.g.*, Exhibit M-13.[8]

---

[7]When Magnolia filed its Motion, it also sought relief from the stay to pursue state law remedies to obtain possession of certain vehicles that constituted its collateral. No testimony, however, was provided regarding the vehicles by either party, and the parties did not discuss the relief from the stay as to the vehicles in their briefs. Therefore, the Court concludes that Magnolia no longer seeks relief from the stay as to the three vehicles included as part of the Collateral.

[8]Although the parties stipulated that each mortgage secured all outstanding liabilities, the mortgage executed in connection with Magnolia Loan # 104236-001, which was admitted as

5

The first of the four properties that remain subject to the automatic stay is actually two adjacent properties on W. North Street in Carlisle – 33 W. North Street and 35-37 W. North Street. The property at 33 W. North Street is a 2.5 story two-family dwelling consisting of a single two-bedroom unit and a one-bedroom unit. Both units were occupied at the time the property was appraised in November 2011. The property at 35 W. North Street is a three-story brick row house attached to a furniture refinishing shop at 37 W. North Street. The row house has been converted into two apartments, with both units occupied as of August 2013. The furniture refinishing shop is no longer in operation, but empty drums, canisters, and other containers have been abandoned in the shop along with other refuse. As of November 2011, 33-37 W. North Street was valued at $210,000.

Sand Bank Road is a manufactured home park with 26 rented pads. The property was appraised at $540,000 in November 2011 and serves as collateral for three loans held by Magnolia..

Red Tank Road is a single manufactured home on a 1.23 acre parcel with an appraised value of $65,000 as of November 2011. The loan secured by Red Tank Road is also secured by 29 W. North Street, a single-family dwelling that was not habitable at the time of the hearing. Debtors were in the process of demolishing the interior of the property and converting it into two two apartments, but they failed to obtain the required local permits before commencing demolition. In their schedules, Debtors report the value of this property to be $83,0000, which was not disputed by Magnolia.

---

Movant's Exhibit 12 and is attached to Proof of Claim #10 filed by Orrstown, does not provide for cross collateralization.

Subsequent to the hearings in this matter, Debtors submitted proof of payment of all post-petition taxes assessed against Sand Bank Road, Red Tank Road, 33 - 37 W. North Street, and 29 W. North Street. They also provided proof of insurance for all properties except Red Tank Road.

*B. The Loans*

Magnolia holds seven claims against Debtors derived from the seven loans originated by Orrstown. On April 4, 2012, Orrstown filed a proof of claim for each of the seven loans, which were transferred to Magnolia in February 2013. At the hearing, each party put on evidence regarding the status of post petition payments on each of the obligations. Debtors claimed to be substantially current on all loans while Magnolia argued that Debtors were delinquent on most loans and that all obligations were cross collateralized. The Court's review of the testimony and exhibits, as well as the claims filed of record, revealed a more complex situation than advanced by either party.

Both parties referred to each loan in the trial exhibits by the last four digits of the number assigned by Magnolia when it acquired the loans from Orrstown. Therefore, the same point of reference will be used when examining the status of each loan as set forth below.

- Loan 4231, in the amount of $485,000, was originated on August 20, 2007 Exhibit M-31 provides that the balance due on the loan as of July 31, 2013 was $372,966.88. This loan is secured by liens on Sand Bank Road and 810 N. Hanover Street.

- Loan 4232, in the amount of $400,000, was originated on October 8, 2009. Exhibit M-31 provides that the balance due on the loan as of July 31, 2013 was $491,694.22. This loan is secured by Sand Bank Road.

- Loan 4233, in the amount of $500,000, was originated on November 15, 2007. Exhibit M-31 provides that the balance due on the loan as of July 31, 2013 was $494,811.30. This loan is secured by the drag strip and previously was secured by the Salem Church Road properties.

7

- Loan 4234, in the amount of $160,000, was originated on July 16, 2007. Exhibit M-31 provides that the balance due on the loan as of July 31, 2013 was $139,300.33. This loan is secured by 33-37 W. North Street.

- Loan 4235, in the amount of $50,000, was originated on March 18, 2011. Exhibit M-31 provides that the balance due on the loan as of July 31, 2013 was $36,490.28. This loan is secured by junior liens on 810 N. Hanover Street, Sand Bank Road, and the drag strip. The loan previously was secured by 90 Salem Church Road.

- Loan 4236, in the amount of $83,000, was originated on March 16, 2009. Exhibit M-31 provides that the balance due on the loan as of July 31, 2013 was $67,020.52. This loan is secured by 29 W. North Street and Red Tank Road. The mortgage instrument for this loan does not include a cross collateralization provision.

- Loan 4237, in the amount of $200,000, was originated on August 21, 2008. Exhibit M-31 provides that the balance due on this claim as of July 31, 2013 was $194,991.45. This loan is secured by 810 N. Hanover and the drag strip.

All loans are subject to a variable interest rate, but Debtors adopted a practice of making payments in a flat amount. Often these payments were less than the amount required under the applicable note. Further, when Debtors submitted late payments, they failed to add in late charges, which perpetuated the delinquent status of the loans. Therefore, not all payments characterized by Debtors as "timely" were applied to reduce principal and interest for the month they were submitted. After reviewing the exhibits of each party, the Court draws the following conclusions as to the payment status of each loan:

- The documentation submitted by Debtors for Loan 4231 supports their position that payments on the loan were made each month after the petition was filed. Magnolia's records, however, report that the amount of the monthly payment increased from $3200 per month in November 2012 to $3281.94 beginning December 2012. Debtors recognized this change because they submitted a payment of $3281.94 on March 28, 2013, but they returned to making monthly payments of $3200 the following month. Therefore, at the time of the hearing Debtors were in arrears on Loan 4231.

8

- Loan 4232 is in default. According to Magnolia's records, Debtors have made no payments on this account since the filing of the petition. The records Debtors submitted in evidence at the hearing did not address this loan.

- Debtors admit that nine payments were missed on Loan 4233. Further, the payments submitted were not for the full amount due. Beginning December 2012, the monthly loan payment was $4558.09. Debtors made payments for March through July 2013 in the amount of $3200. Therefore, this loan is in default.

- Debtors made monthly payments for each month since the filing of the petition for Loan 4234. For the period February 2012 through July 2012, Debtors paid between $1350 per month and $1375 per month. During this period the monthly amount due under the note was $1350.26. Beginning August 16, 2012, the monthly amount under the note increased to $1458.35. Magnolia's records, however, state that the monthly amount due beginning November 2012 was $1136.79. It is impossible to determine whether Debtors have defaulted on the loan because the correct payment amounts for the entire post-petition period are not clearly established in the record.

- Debtors admit that they missed two payments on Loan 4235 in 2012. Further, most timely payments were less than the amount due. Therefore, this loan is in default.

- Magnolia's records indicate that while Debtors' payments were chronically late on Loan 4236, they are current because Debtors remitted $800 each month while payments specified in the note for the relevant period were $757.99. Magnolia's records reflect that these overpayments were credited to prepaid principal.

- Magnolia's records indicate that Debtors are current on Loan 4237. Overpayments routinely were applied to prepaid principal.

### III. Discussion

*A. Magnolia's request for relief from the automatic stay*

Section 362(a) of the Bankruptcy Code imposes a broad injunction against actions to "obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Under § 362(d)(1), relief from the automatic stay may be granted for cause, including a lack of adequate protection of a creditor's interest in

9

property of the estate. Relief also may be granted if a debtor has no equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). The party requesting relief from the stay has the burden of proof on the issue of a debtor's equity in the property, and the party opposing the relief has the burden of proof on all other issues, including whether the property is necessary to an effective reorganization. 11 U.S.C. § 362(g). *See Nazareth Nat. Bank. v. Trina-Dee, Inc.*, 731 F.2d 170, 171 (3d Cir. 1984).

### 1. The adequate protection requirement of 11 U.S.C. § 362(d)(1)

Magnolia asserts that it should be granted relief because its interests in the listed properties are not adequately protected. Adequate protection comes in a variety of forms, including periodic payments, additional or replacement liens, and other relief that provides the "indubitable equivalent" of the secured creditor's interest in the property. *R.T.C. v. Swedeland Dev. Grp, Inc. (In re Swedeland Dev. Grp, Inc.),* 16 F.3d 552, 564 (3d Cir. 1994)*;* 11 U.S.C. § 361. Typically, adequate protection is provided to a creditor through periodic payments, but an "equity cushion" alone may suffice. *In re AMR Corp.*, 490 B.R. 470, 478 (S.D.N.Y. 2013); *In re Liona Corp*., 68 B.R. 761, 767 (Bankr. E.D. Pa. 1987).[9]

Magnolia asserts that it is not adequately protected because all post-petition payments on the cross collateralized loans have not been made, and even those made often were delinquent. Debtors assert that the payments missed are insignificant, that some loans were overpaid, and

---

[9]An "equity cushion" is defined as the value of the property above the amount owed to the moving secured creditor and all liens with priority over the movant's lien. *Nantucket Inv. II v. Cal. Fed. Bank (In re Indian Palms Assoc.*), 61 F.3d 197, 197, 207-08 (3d Cir. 1995)(citing *Pistole v. Mellor (In re Mellor),* 734 F.2d 1396, 1400 n. 2 (9th Cir.1984).

that all arrearages will be paid in the plan through periodic payments generated by the operation of Debtors' businesses. As summarized above, the Court has concluded that Loans 4231, 4232, 4233, and 4235 are in default and that Loans 4236 and 4237 are current. Magnolia's entitlement to relief is affected by the extent to which the loans are cross collateralized. Therefore, this issue will be addressed next.

*2. The effect of the cross collateralization*

Six of the seven loans extended by Orrstown include provisions for cross collateralization in the related mortgages. This provision enables a lender to secure future advances with existing collateral. *See Potomac Coal Co. v. $81,961.13 in Hands of Escrow Agent*, 451 Pa. Super. 289, 296; 679 A.2d 800, 803 (1996). These provisions are also referred to as "future advances" or "dragnet clauses." *Walsh v. Mfrs and Traders Trust Co. (In re Burkett)*, 295 B.R. 776, 784 (Bankr. W.D. Pa. 2003).

Dragnet clauses are enforceable in Pennsylvania if later advances are related to the purposes of the original loan agreement. *Potomac Coal Co.*, 679 A.2d at 804. The Pennsylvania Superior Court has observed that dragnet clauses are disfavored when used in the context of a real estate transaction because they "cloud title." *Id.* at 803. But they are recognized as valid and enforceable if the "relatedness rule" is observed. *See In re Gibson*, 249 B.R. 645 (Bankr. E.D. Pa. 2000); *In re Marques*, No. 05-31854DWS, 2008 WL 4286998, *5 (Bankr. E.D. Pa. Sept. 16, 2008). Future advances must be "of the same class as the primary obligation . . . and so related to it that the consent of the Debtor to its inclusion may be inferred. *Marques* at *5 (citing *Potomac*

*Coal Co.*, 679 A.2d at 804).[10] Here, Debtors have not challenged the effectiveness of the cross collateralization provisions in the mortgages. To the contrary, Magnolia's representation that all the loans were cross collateralized was not disputed even though the documents for Loan 4236 attached to Proof of Claim #10 do not support this assertion. Keeping in mind that dragnet clauses are disfavored under Pennsylvania law, the Court finds that the collateral securing Loan 4236 – 29 W. North Street and Red Tank Road – do not collateralize the remaining loans now held by Magnolia. Therefore, for the purposes of this Opinion, I conclude that only the collateral for the six remaining loans serve as collateral all six loans.

### 3. Lack of adequate protection – § 362(d)(1)

After Magnolia filed the Relief Motion, some of these the deficiencies cited in support of granting relief were cured. All taxes have been paid and proof of insurance on all properties except Red Tank Road have been provided. However, post petition payments for four loans are delinquent. Although Loan 4234 is not in default, the 33-37 W. North Street properties collateralize other loans that are in default. Therefore, if Debtors' are not able to provide Magnolia with adequate protection, it is entitled to relief from stay to exercise its state law remedies against the properties that secure the cross collateralized loans and remain subject to the stay – Sand Bank Road and 33-37 W. North Street.

The same considerations, however, do not apply to Red Tank Road and 29 W. North Street. The mortgages on Red Tank Road and 29 W. North Street do not serve as collateral for the other Magnolia loans. Debtors' performance as to Loan 4236 must be considered

---

[10]The relatedness rule has been abrogated for transactions subject to the Uniform Commercial Code ("UCC"). *See* 13 Pa. C.S.A. § 9204, comment 5 ("collateral may secured future as well as past or present advances, if the security agreement so provides . . . .").

12

independently. Debtors have supplied adequate protection on this loan through regular monthly payments. In addition, Loan 4236 is protected by a substantial equity cushion in the two properties. The balance due on the loan as of July 13, 2013 was $67,020.52, and Red Tank Road and 29 W. North Street have a combined value of $148,000. Concededly, Debtors did not fully performed their obligations under the note. Specifically, they failed to provide documentation that Red Tank Road is insured. Irrespective of this default, Magnolia's interests are adequately protected because the value of 29 W. North Street is sufficient alone to collateralized the loan.[11] Accordingly, Magnolia is not entitled to relief from the stay to pursue state law remedies on these two properties.

Magnolia's interest in the properties securing the six cross collateralized loans must be considered together. Four of the loans are in default, thus the value of all properties serving as collateral for the six loans may provide a source of adequate protection. The assets securing the six cross collateralized loans – 810 N. Hanover, the drag strip, Sand Bank Road, and 33-37 W. North Street – have a combined value of $1,475,000. The outstanding amount due for the cross collateralized loans as of 2013 was $1,730,254.46. Accordingly, Debtors do not have equity in the properties available to offer as adequate protection for the cross collateralized loans.

Although Debtors lack an equity cushion to offer as adequate protection for the cross collateralized loans, they argue that the projected plan payments will enable Debtors to pay Magnolia in full. In their plan, Debtors proposes to consolidate all remaining loan obligations (both pre and post petition amounts) into one loan with a single monthly payment amortized over

---

[11]This finding is not intended to suggest that it is acceptable for Debtors not to insure Red Tank Road. To comply with their fiduciary duties to the estate, insurance on the property should be obtained.

twenty years at contractual rates of interest. The Court finds that these proposed payments fail to adequately protect Magnolia's interests. On the record before the Court, it is impossible to find that the consolidated loan payments proposed in the plan will provide adequate protection when the projected payment amounts are not described. It is unlikely that payment provision included in the proposed plan filed in 2012 have any value at this time when developments in the case have demonstrated that assets either were overvalued when the petition was filed or have declined in value significantly since the filing. There are fewer income producing assets available now to generate the funds necessary to satisfy the claims of secured creditors, such as Magnolia, than existed when the case was filed.

      Further, Debtors' projections of future income and expenses do not provide adequate support for the assertion that Debtors can generate sufficient net income to retire Magnolia's debt in twenty years, or even make regular payments on the consolidated debt. At the hearing, Debtors submitted projections for 2014 describing anticipated income and operating expenses for their various businesses. The projections, however, did not include the payment of debt service on the consolidated loans. Even if this deficiency did not exist, projections of net income for each business seem to have been "pulled out of a hat" are not related to past performance or otherwise supported in the record. Debtors predict that they will have net income from operations for 2014 of $131,435. This is a remarkable number considering Debtors had net income of only $21,246 for the seven-month period January 2013 through July 2013. Accordingly, the Court finds that Debtors have failed to demonstrate that the interests of Magnolia are adequately protected through payments in the proposed plan.

14

Case 1:12-bk-00609-RNO    Doc 377    Filed 11/22/13    Entered 11/25/13 10:39:00    Desc
Main Document    Page 14 of 16

> 4. *Lack of equity in property not necessary to an effective reorganization –*
>    *§ 362(d)(2)*

Relief from the automatic stay also must be granted if a debtor does not have equity in the property subject to the creditor's lien and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). To determine whether a debtor lacks equity in a property, the court "focuses on a comparison between the total liens against the property and the property's current value." *In re Indian Palms Assoc., Ltd.,* 61 F.3d 197, 206 (3d Cir.1995)(citations omitted). After this calculation is made, even if a debtor lacks equity in the property, he has the opportunity to avoid modification of the stay by demonstrating that the property is necessary for an effective reorganization. *In re Ripley*, 412 B.R. 690, 698 (Bankr. E.D. Pa. 2008). *See also In re Epic Capital Corp.,* 290 B.R. 514, 520 (Bankr. D. Del. 2003)(party opposing relief bears burden to prove that collateral is necessary for an effective reorganization). "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means . . . that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs*, Ltd., 484 U.S. 365, 375-76 (1988) (emphasis in original) (quoting *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 370-71 and nn. 12 & 13) (5th Cir. 1987). The Third Circuit has further expounded on the Supreme Court's guidance in *Timbers*, holding that a debtor must show that "a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed." *John Hancock Mutual Life Ins. Co. v. Route 37 Business Park Assoc.,* 987 F.2d 154, 157 (3d Cir.1993).

As described above, Debtors do not have equity in the remaining properties. Therefore, relief from the stay must be granted unless Debtors have met their burden to prove that the collateral is necessary for an effective reorganization. Debtors have failed to show that it can confirm its proposed plan. Following the filing of their initial disclosure statement and plan, Debtors have filed two amended disclosure statements that have yet to be approved by the Court. The pending plan fails to take into consideration the loss of estate assets since the plan was filed and, at this point, can not be confirmed. Debtors have failed to establish that their proposed plan has a realistic chance of being confirmed and, thus, Sand Bank Road and 33-37 W. North Street are not necessary for an effective reorganization.

## IV. Conclusion

For the reasons set forth above, Magnolia has met its burden to prove that Debtor lacks equity in the real properties at issue while Debtors have failed to prove that they have provided Magnolia with adequate protection, that they have equity in the properties or that the properties are necessary for an effective reorganization. An order will be entered granting Magnolia relief from the automatic stay to pursue its state court rights against the properties securing Loans 4231, 4232, 4233, 4234, 4235, and 4237 for which relief has not previously been granted, namely, 33-37 W. North Street and Sand Bank Road. The motion for relief will be denied as to the properties securing Loan 4236, namely Red Tank Road and 29 W. North Street.

An appropriate order follows.

**By the Court,**

*Mary D France*
Chief Bankruptcy Judge

Date: November 22, 2013